IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Joe Mackey, Jr., #200508932,<br><br>               Plaintiff,<br><br>    vs.<br><br>Anderson County Detention Center;<br>Anderson Cart-Team; Captain NFN<br>Sackett; and Lt. NFN Jones,<br><br>               Defendants. | Civil Action No. 6:06-1180-GRA-WMC<br><br>**REPORT OF MAGISTRATE JUDGE** |

        The plaintiff, a pretrial detainee proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983.

        Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., all pretrial matters in cases filed under Title 42, United States Code, Section 1983, are referred to a United States Magistrate Judge for consideration.

        The defendants filed a motion for summary judgment on September 5, 2006. By order filed September 6, 2006, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On October 2006, the plaintiff filed a response to the motion. On November 8, 2006, the defendants filed a reply brief, and the plaintiff filed a sur-reply on November 17, 2006.

**FACTS PRESENTED**

The plaintiff alleges in his amended complaint that on February 8, 2006, Lieutenant Strickland ordered him to move to another cell. As he was being escorted to the cell, an Officer Sworts "threatened to harm" the plaintiff. According to the plaintiff, when they got to the cell, he "hit Officer Sworts several time[s]" and Officer Sworts "tazered" the plaintiff several times. The plaintiff claims he got in a fight with Strickland and Officer Minnie. He claims he was put in a restraint chair for approximately 12 hours. The plaintiff claims he has pain in his pack and shoulder as a result of the defendants' cruel and unusual punishment (am. comp. 1-3).

The defendants attached the affidavits of Officer Paul Schwartz, Sgt. Geraldine Strickland, Cpl. Kenya Minnie, and Officer Bobby Ham in support of the motion for summary judgment. Sgt. Strickland stated that the plaintiff was in a cell with approximately 20 other inmates. The plaintiff was housed in a cell which is essentially a large room with beds and a day area. Sgt. Strickland was doing rounds on February 8, 2006, and heard someone yelling. She went to investigate and determined it was the plaintiff who was yelling. The officers stated in their affidavits that the plaintiff had a history of being a very disruptive inmate and had tried on other occasions to incite other inmates. He had also been in physical altercations prior to this incident and again had tried to incite other inmates on prior occasions. Sgt. Strickland saw the plaintiff in the cell swinging a broom handle with a piece of sheet over his face like a bandana. She ordered the plaintiff to remove the mask and put down the broomstick. The plaintiff finally put down the broom handle after being given direct orders, but did not remove the piece of sheet from his face. Sgt. Strickland did not push the issue on this matter at that time as wanted to move him to another area away from the other inmates as quickly as possible. She had called for assistance after seeing the plaintiff with the broom handle, and other officers arrived on the scene (Strickland aff.).

At that point, Sgt. Strickland's primary concern was to remove the plaintiff from the area and from the presence of other inmates. Therefore, after other officers arrived and the plaintiff had put down the broom handle, Sgt. Strickland opened the cell door to escort the plaintiff to another cell. During this time, the plaintiff was still cursing loudly and was also making threats, but was following commands. The plaintiff was not placed in restraints at that point so as to more quickly remove him from the area, but was simply instructed to keep moving to the new cell. Officer Schwartz stated that when he arrived, Sgt. Strickland told him to go and get the tasor, and he left at that time. He returned as quickly as possible with the tasor (affs. of Strickland, Minnie, Ham, Schwartz).

The plaintiff was taken to another cell, Cell 8-1, where he would be the only inmate in this cell. There were at this time five officers present escorting the plaintiff to the new cell. The plaintiff kept talking and making threats and using profanity the entire time, but was continuing to move to the new cell. However, once he got to the doorway of the new cell, the plaintiff stopped and refused to go any further. The plaintiff was still cursing loudly and was given several direct orders to go into the cell, but refused to move. Up to this point, no officer had placed a hand on the plaintiff, but they had simply been able to talk with him and control the situation in this manner. The plaintiff was in the doorway of the cell, at which time Sgt. Strickland stated that they were going to try to close the cell door. The plaintiff made a move toward Officer Schwartz and raised his arm up as if to strike him. Officer Schwartz then pulled the tasor to gain control of the situation. When Officer Schwartz pushed the button on the tasor, it did not work as the batteries were dead. The plaintiff first attacked Sgt. Strickland and then the other officers swinging wildly. Sgt. Strickland stated that she was struck multiple times in the head, face, and neck. Corporal Minnie stated that the plaintiff then pushed her, hit her in the face and broke her glasses, and also bit her on the arm. The plaintiff also hit Officer Schwartz multiple times, breaking

his glasses, and also hit other officers who were present (affs. of Strickland, Minnie, Ham, Schwartz).

After the plaintiff began swinging and assaulting the officers, Cpl. Minnie sprayed the plaintiff with several bursts of chemical munitions. Cpl. Minnie stated that she used several bursts of chemical munitions to try to gain compliance from the plaintiff, but these had no immediate effect. Sgt. Ham was finally able to push the plaintiff's face first against the wall and was then able to walk him into the cell. The cell door was then secured. After the plaintiff was secured in the cell, he was still cursing loudly and threatening the officers, and Sgt. Strickland had the officers leave the area. The officers needed to go and be checked by medical personnel because of their injuries, and she was hopeful that by leaving the area, this would help calm the plaintiff and de-escalate the situation (affs. of Minnie, Strickland, Schwartz, Ham). Cpl. Minnie had to go to the hospital for her injuries (Minnie aff. ¶ 37). The officers referenced above, along with Lt. Jones and Capt. Sackett, stated that defendants Jones and Sackett were not present when the altercation with the plaintiff occurred.

Shortly after the officers involved in the use of force with the plaintiff had left the area to seek medical attention, Lt. Jones and Capt. Sackett arrived at the detention center. They were contacted as a result of the use of force involving the plaintiff. The CERT team was also called into the Detention Center. The CERT team is a group of officers who have additional training to deal with emergency situations concerning inmates. Lt. Jones stated that she and Capt. Sackett arrived at the detention center at about the same time and they were informed as to what occurred from officers present during the matter. When they arrived, the plaintiff was in a cell by himself, but was still yelling loudly and using profanity. They were also informed that a can of chemical munitions and Officer Schwartz's glasses were missing after the altercation with the plaintiff. For security reasons, the chemical munitions had to be located as quickly as possible, and the plaintiff

would have to be moved to another cell to search the cell where he was housed. In addition, though the plaintiff was in a cell isolated from other inmates, he was still screaming loudly and using profanity and trying to incite other inmates. Capt. Sackett stated that he could not specifically recall if the plaintiff was still making threats, but he was screaming very loud and using profanity and there were concerns that he would incite other inmates in the area and not allow a search of the area. The cell the plaintiff was in at that time had only a bar door as opposed to a solid steel door. Capt. Sackett stated that because of the plaintiff's continued actions and in order to search the cell, he felt it was best to move the plaintiff to the restraint chair so that he could be placed in a room to hopefully calm him down, prevent him from inciting other inmates in the area, and de-escalate the situation. Therefore, Capt. Sackett ordered the CERT team to move the plaintiff to another cell which had a solid steel door and another door between that cell and the remaining inmate population. Another concern was that because his current cell with only a bar door, other inmates could have possibly passed him things which he could have used as weapons, and Capt. Sackett felt it was appropriate to move him to another area (Jones, Sackett, Ham affs.).

Lt. Jones and Capt. Sackett stated that the CERT team then went to the plaintiff's cell, and the plaintiff was instructed to lay down on the floor. The plaintiff complied with this request and did not resist, though he continued to talk loudly and use profanity. At this point, the plaintiff was taken to and placed in the restraint chair. Periodic checks were done on the plaintiff during the time he was in the restraint chair. Sgt. Ham stated that he removed the plaintiff from the restraint chair at least once and allowed him to move around, get a drink of water, and offered for him to use the restroom. He, along with other officers, also did periodic checks on the plaintiff while he was in the restraint chair (Jones, Sackett affs.).

The plaintiff was removed from the restraint chair early the following morning. Officer James Beaty stated that he was not there when the incident occurred, but was checking on the plaintiff during his normal rounds. He opened the plaintiff's cell door to check on the plaintiff and the plaintiff at that time was awake, alert, and had calmed down. The plaintiff asked to be removed from the restraint chair, and Officer Beaty spoke with him and informed him that if he would remain calm, he would remove him from the chair. He removed the plaintiff at that time from the restraint chair, and the plaintiff did initially have difficulty walking as his legs had fallen asleep. At that point, Officer Beaty removed the plaintiff's restraints and had the plaintiff checked by medical personnel. He noted that the plaintiff had some scrapes or scratches on his knuckles, but he did not see any other visible injuries. The plaintiff was examined by Nurse Juanita Fletcher, who noted that the plaintiff had scratches on his knuckles and also slight swelling to his wrists. She gave the plaintiff Ibuprofen (Fletcher, Beaty affs.). The plaintiff was taken to the shower in order to clean himself and remove any gas that may have remained on him from the altercation with the other officers. According to the plaintiff's complaint, he was able to wash off the gas immediately after the incident (comp. 4). Officer Beaty stated that while the plaintiff was being taken to the shower, the plaintiff yelled to his brother who was also incarcerated at the Detention Center. He stated that the plaintiff yelled to his brother to try and get him to start something stating that you need to "buck too." Officer Beaty stated that the plaintiff was trying to get his brother to get into some altercation with the detention officers, and he told the plaintiff that he would need to calm down or he would have to be placed back in restraints. The plaintiff did not make any additional statements at that point and was placed into another cell after his shower (Beaty aff.).

The plaintiff pleaded guilty to the charge of assault on a correctional facility employee in relation to the incident.

6

## **APPLICABLE LAW**

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome

of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## ANALYSIS

### *Defendants' Motion for Summary Judgment*

The plaintiff alleges that the defendants used excessive force against him. In *Riley v. Dorton*, 115 F.3d 1159, 1166 (4th Cir. 1997), the Fourth Circuit Court of Appeals concluded that the excessive force claims of pretrial detainees are governed by the Due Process Clause of the Fourteenth Amendment. The proper analysis under the Fourteenth Amendment is "whether the force applied was 'in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Taylor v. McDuffie*, 155 F.3d 479, 483 (4th Cir. 1998).

The Supreme Court established four factors that are relevant in analyzing the subjective prong of the inquiry. *See Whitley v. Albers*, 475 U.S. 312 (1986). These factors are (1) the need for the application of force, (2) the relationship between the need and the amount of force that was used, (3) the threat reasonably perceived by the responsible officials, and (4) any efforts made to temper the severity of a forceful response. *Id.* at 321.

8

As argued by the defendants, there is no question that the force used in this case was necessitated by the actions of the plaintiff. The plaintiff does not even allege that the defendants struck him or harmed him in any way prior to him striking Sgt. Strickland (am. comp. 1). Second, the officers used only the necessary amount of force in order to place the plaintiff into the cell, and once this was accomplished, the officers left the area at that point to seek medical treatment. Third, there was clearly a threat reasonably perceived by the defendants as the plaintiff admittedly struck Sgt. Strickland and assaulted other officers. Finally, there were clear efforts made to avoid the necessity of force as the plaintiff was given several direct orders to proceed into the cell, but refused to comply with the orders.

In *Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir. 1994) (en banc), the court held that "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is *de minimis*." Further, "extraordinary circumstances are present when 'the force used [is] of a sort repugnant to the conscience of mankind … or the pain itself [is] such that it can properly be said to constitute more than *de minimis* injury.'" *Taylor*, 155 F.3d at 483-84 (citing *Norman*, 25 F.3d at 1263 n. 4). Importantly, in *Riley*, the court extended the holding of *Norman* to excessive force claims brought by pretrial detainees. *Riley*, 115 F.3d at 1166. In the present case, the plaintiff has failed to allege any specific injuries that were more than *de minimis* in nature. *See Taylor*, 155 F.3d at 484 ("temporary swelling and irritation is precisely the type of injury this Court considers *de minimis*."); *Stanley v. Hejirika*, 134 F.3d 629, 637-38 (4th Cir. 1998) ("bruising of his right arm, left jaw, left and right wrists and back, and a tooth which was loosened" constituted *de minimis* injury).

With regard to the plaintiff's complaints about being placed in the restraint chair, confinement conditions of pretrial detainees are to be evaluated under the Due Process Clause of the Fourteenth Amendment rather than under the Eighth Amendment.

*Bell v. Wolfish,* 441 U.S. 520, 535 (1979).  Where a pretrial detainee complains of prison conditions, the proper inquiry is whether the conditions of his confinement amount to punishment before a proper adjudication of guilt.  *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992).  Not every hardship suffered during pretrial detention amounts to "punishment" in the constitutional sense.  *Id.* (citing *Bell,* 441 U.S. at 53).  Absent a showing of expressed intent to punish on the part of the correctional officials, the determination of whether a particular action is punitive turns on whether it was rationally connected to legitimate non-punitive governmental objectives and whether it was excessive in relation to that purpose.  *Bell*, 441 U.S. at 537-40; *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988).

In the present case, the plaintiff was extremely disruptive, had assaulted several correctional officers, and was still verbally attempting to incite other inmates.  In addition, a can of chemical munitions was missing after the altercation with the plaintiff, and his cell and others in the area needed to be searched immediately.  The plaintiff needed to be moved from the area so other inmates were not incited to be disruptive during this search.  For these reasons, Capt. Sackett used his judgment and determined that the plaintiff should be placed in the restraint chair in an isolated area so that he could be separated from other inmates and they could de-escalate the situation.  Based on these facts, it is clear that this was not for the purpose of punishment, but was for the legitimate governmental purpose of protecting the security of the prison.

The second issue is whether the action was rationally related to a legitimate governmental purpose.  Again, the governmental purpose in placement of the plaintiff in the isolated area in the restraint chair was to isolate him from other inmates to keep him from inciting them.  The placement of the plaintiff was rationally related to the objective as the objective was to remove the plaintiff from the area of other inmates, isolate him so that he could not incite other inmates, and calm the plaintiff so that he would not continue to incite other inmates.

Finally, the third basis is whether the action taken was excessive when compared with the governmental purpose for which the action was undertaken. Here, as stated above, the plaintiff was attempting to incite other inmates, and the defendants were looking for a method to calm him down and de-escalate the situation. The action taken was clearly not excessive as it was in direct relation to the governmental purpose for which it was undertaken. Accordingly, the claim fails.

The plaintiff also alleges that his constitutional rights were violated because he was placed on nutraloaf, a loaf consisting of a blend of a variety of foods from the normal prison meals, for four days. Capt. Sackett stated that the nutraloaf provided to the plaintiff exceeded daily requirements for calories, protein, and vitamins (Sackett aff. ¶¶ 29-30). The plaintiff has set forth no evidence to show that the defendants were deliberately indifferent to his health or welfare or that he was placed on nutraloaf maliciously or sadistically for the sole purpose of causing harm. *See LeMaire v. MAASS*, 12 F.3d 1444, 1456 (9th Cir. 1993). The plaintiff does not allege, and it does not appear, that he suffered any ill effects from eating the nutraloaf for a short period of time. In addition, defendants Sackett and Jones both stated they did not place the plaintiff on nutraloaf. Based upon the foregoing, the claim fails.

In this case, as set forth above, the plaintiff has failed to demonstrate that the actions of the defendants violated any of his constitutional rights. *See Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998) (If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist."). Therefore, the defendants are entitled to qualified immunity.

To the extent the plaintiff has alleged any state law claims against the defendants, the court should decline to exercise supplemental jurisdiction over any such claims as it is recommended that summary judgment be granted on the federal claims. *See* 28 U.S.C. §1367(c).

*Plaintiff's Motion for Default Judgment*

On January 3, 2007, the plaintiff moved for default judgment. While the motion is difficult to interpret, it appears that the plaintiff is alleging the defendants failed to timely answer his complaint. However, a review of the docket shows that the defendants timely answered the plaintiff's amended complaint on August 17, 2006. Accordingly, the motion for default is meritless and should be denied.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, this court recommends that the defendants' motion for summary judgment be granted. Furthermore, it is recommended that the plaintiff's motion for default judgment be denied.

_____
WILLIAM M. CATOE
UNITED STATES MAGISTRATE JUDGE

March 20, 2007

Greenville, South Carolina